Filed 8/10/26  In re V.T. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re V.T., a Person Coming Under the Juvenile Court Law. | H053458<br>(Santa Clara County<br> Super. Ct. No. 25JD028450) |
| SANTA CLARA COUNTY DEPT. OF FAMILY & CHILDREN'S SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>V.T.,<br><br>    Defendant and Appellant. | |

On February 27, 2025, the Santa Clara County Department of Family and Children's Services (Department), filed a juvenile dependency petition alleging the failure of the mother, G.D. (Mother) and the father, V.T. (Father)[1] to protect and provide support for their minor child, V.T., under Welfare and Institutions Code section 300, subdivision (b)(1).[2]  The Department alleged that Mother and Father (the parents) were unable to supervise or protect V.T. adequately because she had been exposed to the drug fentanyl while in their care.  The Department also alleged that Father had lost consciousness due to fentanyl exposure while taking care of V.T., causing him to knock

---

[1] As the father and the minor child share the same initials, we shall only refer to the minor child by her initials to avoid confusion.

[2] Undesignated statutory references are to the Welfare and Institutions Code.

over V.T.'s stroller and injure her.  On February 28, 2025, the juvenile court ordered that V.T. be detained, but released her into the parents' care pending a jurisdictional hearing.

On June 6, 2025, the juvenile court sustained the allegations of the petition and took jurisdiction over V.T., while ordering that she remain in Mother's and Father's custody with family maintenance services.

On August 13, 2025, after Father filed a notice of appeal from the court's jurisdictional findings, the juvenile court terminated dependency jurisdiction and issued orders granting Mother sole legal and physical custody of V.T. with supervised visitation to Father.[3]  The Department therefore argues that the instant appeal should be dismissed as moot.

For the reasons stated below, we do not dismiss the appeal as moot, but find no merits to Father's claims of error and affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Petition and Detention*

#### 1.  *Petition and Allegations*

On February 27, 2025, the Department filed a juvenile dependency petition alleging that V.T., who was four months old at the time, came within the juvenile court's jurisdiction because she had suffered, or was at substantial risk of suffering, serious physical harm "as a result of the failure or inability of his or her parent or legal guardian to supervise or protect the child adequately."  (See § 300, subd. (b)(1).)  The Department alleged that: (1) the parents were unable to supervise or protect V.T. adequately because she had been exposed to fentanyl while in their care; and (2) on February 9, 2025, Father

---

[3] We grant Father's and the Department's requests for judicial notice, filed February 13, 2026, and April 15, 2026, respectively, of the juvenile court's August 13, 2025 order (filed on August 22, 2025) terminating jurisdiction and the minute order from the August 13, 2025 hearing.

had placed V.T. in her stroller and subsequently lost consciousness due to exposure to fentanyl, resulting in him knocking over V.T.'s stroller and V.T. sustaining injuries.

In its report filed prior to the initial detention hearing, the Department indicated that it had received multiple reports regarding the February 9, 2025 incident. According to the reports, Father had been in the parking lot with a friend, and the friend was sitting in a car "hot boxing" fentanyl. The friend then rolled down the window and blew fentanyl in Father's direction, causing him to lose consciousness. As he fell, he knocked over V.T.'s stroller and V.T. fell out. Paramedics and the police responded to the scene, resuscitated Father, and transported V.T. to urgent care for treatment of a bruise and abrasion to her face. Mother was allegedly unaware that V.T.'s injuries were the result of Father being exposed to fentanyl, as Father told Mother V.T. had fallen out of the stroller after the stroller rolled on the side of the sidewalk and flipped over.

The Department stated that during an interview with Father on February 11, 2025, Father indicated that he, Mother, V.T., and Mother's brother had dropped off Mother at work in San Rafael on the evening of February 9, 2025. Mother's brother then dropped Father and V.T. back home in San Jose. As Father walked around the car toward Mother's brother, Father saw him "doing something" in the car; Mother's brother then rolled down the window and blew smoke out into Father's face. Father lost consciousness and fell down, and had to be resuscitated by paramedics. While Father confirmed that V.T. was with him and strapped into her stroller, he was unsure of how she became injured. A subsequent police report confirmed the presence of drugs in the car, which Mother's brother's admitted as belonging to him. The Department indicated that while it was unclear whether Mother and Father were aware of the drugs being in the car, it was more than likely that the drugs were in the car while V.T. was a passenger, given Father's subsequent exposure. Father also denied that he was using drugs.

The Department met with the family on February 13, 2025, but was unable to effectively discuss safety concerns and a plan, as Father began to escalate and claimed

3

the social worker was being "coercive," while Mother did not feel comfortable discussing anything that she had not been present for. The parents agreed to voluntary drug testing; Mother tested negative, while Father tested positive for THC.

The Department attempted to speak with Mother and Father on two other occasions but indicated that Father was very agitated and "bulldozed" the conversation, again accusing the social worker of being coercive. Mother also made statements that the Department was "insinuating" things, and the investigation was "pointless." The Department therefore felt that the parents were minimizing the situation and the concerns regarding V.T.'s possible exposure to fentanyl, as well as the possibility that she could have been more seriously injured when falling out of the stroller.

The Department also reviewed the police report from the February 9, 2025 incident, where the investigating officers found several burned and rolled pieces of foil in the trunk of the vehicle, which Mother's brother admitted to using to smoke methamphetamine. Officers also found a bag of white powder in the brother's bag inside the trunk, which resembled fentanyl. The report further indicated that Father had exited the vehicle and was opening the trunk to take out V.T.'s stroller when he collapsed. Given that Father reported he had inhaled smoke coming out of the window, the Department noted it was possible that Father had been exposed to drugs while he was in the vehicle or had been actively using with Mother's brother, resulting in an overdose. The petition and the report did not recommend that V.T. be removed from the parents' custody and care.

### 2. *Detention Hearing*

An initial detention hearing was held on February 28, 2025. At the hearing, the court found that a prima facie showing had been made with respect to the allegations in the petition and ordered that V.T. be detained but released into the parents' care pending a jurisdictional hearing.

**B.** *Jurisdictional/Dispositional Orders (May 2025)*

**1.** *Department's Report, Additional Findings, and Amended Petition*

An initial jurisdictional and dispositional hearing was scheduled for March 26, 2025. In anticipation of the hearing, the Department filed an initial report on March 26, 2025, where it recommended that the court sustain the petition, adjudge V.T. as a dependent of the court, and allow her to remain in custody and care of the parents, with the parents to receive family maintenance services. In the report, the Department indicated that Father had three prior arrests between 2011 and 2024, two of which involved alcohol and substance abuse. The Department specifically noted that in March 2024, Father was arrested for a domestic violence incident while Mother was pregnant. Father was alleged to have pushed Mother's head two times during a verbal argument, then stood in front of her vehicle to prevent her from leaving. Mother called the police and requested an emergency protective order for her safety. Upon arresting Father, officers discovered a white substance in Father's wallet, which was determined to be fentanyl after testing. At the time of the subject report, Father's case for the 2024 incident was still active. When the Department spoke to the parties about the domestic violence incident and arrest, Mother denied that any physical violence occurred and claimed she had called the police because she was in a new city and did not know where to go. Father also indicated that he was not guilty; he stated that at the time, he and Mother were "not intact", and he was in an inpatient veteran's program, but would not identify what the program was for.

The Department further noted that the parents had been dealing with housing difficulties in previous years, but were currently receiving housing services through the LifeMoves program and had been complying with all requirements, with no concerns from their case manager about their progress or their ability to care for V.T. The parents had also participated in random drug testing during the reporting period and Mother consistently tested negative for any illicit substances or alcohol. As for Father, an initial

oral swab taken on February 28, 2025, showed a preliminary positive result for fentanyl. However, Father claimed that the test had been tampered with and refused to provide another oral swab to send to the lab for confirmation. Father subsequently agreed to take a urine test, which showed preliminary positive results for THC, morphine, and alcohol, but Father again refused to have the sample sent to the lab for confirmation. Father's subsequent random drug tests remained positive for THC only, which Father indicated he used for pain management.

At the March 26, 2025 hearing, the trial court continued to matter for a contested hearing on May 23, 2025, and May 28, 2025. Prior to the contested hearing, the Department filed three addendums to its March 26, 2025 report. In the first addendum filed on April 24, 2025, the Department indicated that in April 2025, Mother reported the family had moved from LifeMoves in San Jose to temporary housing in Belmont. The Department also attempted to obtain documents confirming that Father was being treated in an outpatient program through the Veteran's Affairs office, as the documents they received were not signed or verified. In response, the assigned social worker received several emails from Mother accusing the Department of "harassing" and "antagonizing" their family and engaging in an "improper investigation." The Department was finally able to confirm that Father was receiving treatment through Veteran's Affairs for mental health issues, and had been enrolled since August 2024 in an intensive outpatient program for addiction treatment. The Department noted that while the parents had been somewhat cooperative, Father's refusal to discuss his substance abuse issues, his possession of fentanyl in the recent past, and the parents' defensiveness and unwillingness to talk about the previous domestic violence incident, all demonstrated that continued family maintenance was necessary to allow the Department to ensure V.T.'s safety. Based on the addendum, the Department also filed a first amended petition on May 16, 2025, which contained the same first allegation as the original petition, but amended the second allegation regarding the February 9, 2025 incident to state that

6

Father had previously been found in possession of fentanyl in March 2024 and his use of fentanyl placed [V.T.] at substantial risk of physical harm in the parents' care without court oversight. The amended petition also added a third allegation that Father suffered from mental health disorders, including post-traumatic stress disorder, paranoia, and persecutory delusion, and he had been previously psychiatrically hospitalized on several occasions, thus placing V.T. at substantial risk of serious harm.

In the second addendum filed on May 16, 2025, the Department indicated that it had received records from the Veteran's Affairs office reflecting that Father had three psychiatric hospitalizations in January 2024, December 2024, and January 2025, and his diagnosis history included several mental health and substance abuse disorders. He had also tested positive for methamphetamine during his December 2024 hospitalization and had admitted to using methamphetamine a few days prior to his January 2025 hospitalization. The records further indicated that Father's symptoms and hospitalization in January 2025 were likely the cause of methamphetamine/cocaine induced psychotic disorder. The Department also noted that in May 2025, Mother reported that she and Father were no longer together, and she and V.T. were staying in San Rafael.

In the third addendum filed on May 23, 2025, the Department indicated that it met with Mother, who indicated that Father had checked himself into an inpatient treatment program for post-traumatic stress disorder through the Veteran's Affairs Office in Palo Alto. Mother also indicated that she and V.T. were residing in her place of employment while Father was undergoing treatment. Father's counsel later confirmed that Father had been transferred to an outpatient mental health program. When the Department informed Mother that she needed to provide her current address if the court ordered that the parents receive family maintenance services, Mother refused to provide her address and indicated that she did not plan to reside in Santa Clara County. The Department therefore continued to recommend that the court sustain the first amended petition and order Family Maintenance Services for the parents.

### 2. *Jurisdictional and Dispositional Hearing*

On May 28, 2025, the court held a contested jurisdictional and dispositional hearing. The parties chose not to submit any evidence or call witnesses and proceeded with argument only. The Department continued to recommend that the court sustain the first amended petition, adjudge V.T. as a dependent of the court, and have V.T. remain in Mother's and Father's care under a plan of family maintenance. The Department argued that the history of the case demonstrated that Father exhibited ongoing mental health and substance abuse issues that put V.T. at risk of harm, starting from his arrest in March 2024 while Mother was pregnant with V.T. through his most recent treatment for mental health issues in May 2025. The Department further noted that there were several inconsistencies in the parents' descriptions of the February 9, 2025 incident, and neither parent appeared to understand the Department's concerns about safety risks to V.T. due to Father's fentanyl overdose. The Department also asserted that neither parent demonstrated a willingness to work with the Department or be forthcoming about their struggles, including moving between shelters and Father's continued substance abuse and mental health issues.

Mother contended that the Department could not demonstrate a current risk of harm from Mother to V.T., particularly since Mother was now separated from Father, remained the primary caretaker for V.T., and was residing with her employer. Mother further argued that the evidence presented only showed one accidental substance exposure, which may have demonstrated Father's poor judgment, but did not reflect continuing substance abuse issues that reflected a current risk of harm or inability to provide care to V.T. Mother also argued that Father's history of mental health and substance abuse issues did not reflect an inability to care for V.T. or risk of harm, because Father always sought treatment when needed and addressed his issues promptly.

Father similarly argued that the February 9, 2025 incident was a "one-off" incident that involved Father being exposed to fentanyl without his knowledge or consent, and

there was no evidence Mother and Father had knowingly put V.T. in a situation where she was exposed to drugs. Father also pointed to his drug test results, which, apart from his initial test, were all "clean," and reflected no exposure to fentanyl. Father further contended that his prior possession of fentanyl during his March 2024 arrest was not enough to demonstrate current drug use or any current risk of harm or danger to V.T. Father finally argued that his mental health and substance abuse history reflected that he was currently working on these problems and seeking help, and the fact that he suffered from such issues did not demonstrate that he posed a risk to V.T.'s safety and wellbeing.

Finally, counsel for V.T. agreed with the Department's recommendation, and briefly argued that there was a preponderance of evidence demonstrating a risk of harm to V.T. Counsel noted that V.T. had suffered physical harm as a result of the February 9, 2025 incident, and even if the fentanyl exposure was inadvertent, the incident reflected that V.T.'s parents were unable to adequately supervise and protect her.

After taking the matter under submission, the court issued its final order on June 6, 2025. In making its rulings, the court found that Father had not been forthcoming about his illicit use of drug use, despite evidence demonstrating his treatment for substance abuse, his prior arrest for possession of fentanyl in March 2024, and his exposure to fentanyl on February 9, 2025. The court also noted Father's history of mental health issues, and determined that the facts demonstrated an "ongoing concern regarding [Father's] mental health and ongoing concern regarding substance use and [V.T.'s] exposure." As to Mother, the court cited the Department's difficulties in working with Mother and her lack of willingness to be forthcoming about Father's substance use, as well as her minimizing the situation that led to the underlying case. The court opined that "[Mother's] and [Father's] focus throughout this case seems to be to avoid involvement with or oversight from the department rather than being forthright in acknowledging and addressing the concerns that have arisen." The court therefore concluded that the allegations in the amended petition had been proven by a preponderance of the evidence;

9

however, on its own motion, the court amended the second allegation in the petition to state that "the child's exposure to fentanyl while in the parents' care places her at substantial risk of serious physical harm in their care without court oversight," and sustained the petition as amended. The court declared V.T. as a dependent of the court and ordered that she remain in the parents' custody subject to supervision by the Department and participation in family maintenance services.

On July 2, 2025, Father timely appealed the jurisdictional and dispositional order.

## C.  *Supplemental Petition and Dismissal*

On July 3, 2025, the Department requested a protective custody warrant to remove V.T. from Father's care. The Department alleged that on June 26, 2025, Mother contacted her social worker, indicating that V.T. was in Father's care and he was refusing to return her to Mother. Mother provided the Department with text messages Father had sent her while V.T. was in his care, including calling her obscene names, accusing her of being a liar, and threatening to take V.T. from her and "fuck [her] whole house up." The Department subsequently contacted Father, who was verbally aggressive and made numerous allegations that Mother and her family were "gang members" and trying to kill him; he also claimed that V.T. was not his biological child and ultimately hung up on the Department without verifying that V.T. was safely in his care. When the Department contacted Father a second time, he indicated he was willing to return V.T., but refused to provide the Department with his location. He also refused to meet Mother at the San Rafael police station, where she was waiting to pick up V.T., and made Mother meet him at a location in the community before returning V.T. to her. The court granted the warrant on July 7, 2025.

On July 9, 2025, the Department filed a supplemental petition pursuant to section 387[4] for the removal of V.T. from Father's care and custody. The supplemental petition

---

[4] This section provides, in relevant part, that the original social worker in a dependency matter may file a supplemental petition for an order changing or modifying a

alleged that the current placement with Father was no longer effective in the rehabilitation and protection of V.T., based on the court's issuance of the protective custody warrant on July 7, 2025, and Father's actions and behavior that resulted in the warrant. The Department requested that V.T. remain in Mother's sole care and custody. Following a hearing on the same day, the court found that a prima facie showing had been made with respect to the allegations in the petition and ordered that V.T. be detained and removed from Father's custody, and released into Mother's care pending a jurisdictional hearing.

On August 13, 2025, the court held an uncontested jurisdictional hearing on the Department's supplemental petition. At the conclusion of the hearing, the court adopted the Department's recommendations to remove V.T. from Father's custody and care, terminate dependency jurisdiction, and issue a final judgment with custody orders granting Mother sole legal and physical custody of V.T. with supervised visitation to Father. Father did not file an appeal from the final judgment and custody orders.

## II. DISCUSSION

### A. *Mootness*

As a preliminary matter, the Department argues that Father's appeal should be dismissed as moot based on the court's subsequent dismissal of the dependency case. The Department contends that because Father did not appeal the dismissal or the resulting custody orders, there is no effective relief that this court can grant Father in the current appeal. In his opening brief and on reply, Father claims that the appeal is not moot because the jurisdictional findings were erroneous as a matter of law; alternatively, he argues that this court should exercise its inherent discretion to reach the merits of the

previous order by removing a child from the physical custody of a parent. The petition must contain a statement of facts "sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the child." (§ 387, subd. (a) & (b).)

11

appeal based on the potential prejudice from the court's jurisdictional findings against him.

### 1. *Applicable Law*

"A court is tasked with the duty ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' [Citation.] A case becomes moot when events ' "render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief." ' [Citation.] For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*).)

While confirming that the mootness rule applies to dependency matters, the California Supreme Court in *D.P.* clarified that there may be situations where jurisdictional findings remain subject to challenge even if the juvenile court has since terminated its jurisdiction. (*D.P., supra,* 14 Cal.5th at p. 276–278.) In particular, "[b]ecause reversal of the jurisdictional finding calls into question the validity of orders based on the finding, review of the jurisdictional finding can grant the parent effective relief," which would render the appeal not moot. (*Id.* at pp. 276–277.) "For example, a case is not moot where a jurisdictional finding affects parental custody rights [citation], curtails a parent's contact with his or her child [citation], or 'has resulted in [dispositional] orders which continue to adversely affect' a parent. [Citation.]" (*Id.* at p. 277–278.)

In addition, the court in *D.P.* noted that even if an appeal is moot, courts may exercise their inherent discretion to reach the merits of the appeal on a case-by-case basis. (*D.P. supra,* 14 Cal.5th at p. 282.) Given the unique circumstances of dependency cases, and the higher potential for mootness problems of such cases on appeal, the court

identified several additional factors for appellate courts to evaluate when deciding whether discretionary review of a moot case may be warranted outside of those instances. (*Id.* at pp. 284–286.)  In summary, the court held that "when a parent has demonstrated a specific legal or practical consequence that will be averted upon reversal, the case is not moot, and merits review is required.  When a parent has not made such a showing, the case is moot, but the court has discretion to decide the merits nevertheless." (*Id.* at p. 283.)

### 2.  *We Exercise Our Discretion to Reach the Merits of Father's Appeal*

In claiming that his appeal is not moot, Father asserts that the jurisdictional findings can have "toxic" prejudicial effects on subsequent proceedings, particularly given V.T.'s young age and the possibility of future family or dependency proceedings that may rely on the same findings.  Father also claims that because the Department characterized the parties' conduct as "severe neglect" several times in its reports, this "suggests a likely referral" by the Department to the California Child Abuse Central Index (CACI), which carries several legal consequences.  The Department does not address this claim in its briefing.

As acknowledged by the California Supreme Court in *D.P.*, California's Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq.) requires that several state agencies, including the Department, forward substantiated reports of child abuse or neglect to California's Department of Justice for inclusion in the CACI. (Pen. Code, § 11169, subd. (a).)  "A report is substantiated if it 'is determined by the investigator who conducted the investigation to constitute child abuse or neglect.' " (*D.P. supra,* 14 Cal.5th at p. 278.)  The court in *D.P.* also noted that inclusion in the CACI could result in severe legal consequences for the parents, given that the information therein is available to several state agencies and employers and is required to be checked under various circumstances. (*Id.* at p. 279.)  While the *D.P.* court did not find the father's concerns based on possible CACI inclusion to be a tangible or probable consequence in that

13

particular case, the California Supreme Court directly addressed the same claim in a recent case, *In re S.R.* (2025) 18 Cal.5th 1042, 1048 (*S.R.*) where it held that "a parent's appeal from a juvenile court's jurisdictional finding survives a mootness challenge where the parent shows that an agency must report the allegation underlying the court's finding for inclusion in the CACI." For such a showing to be satisfied, the parent must demonstrate that the sustained allegations in the petition "has been or will be included in the CACI." (*S.R.,* at p. 1053.)

Based on *S.R.,* we agree with Father that if the findings in this case were to result in his inclusion in the CACI, his legal rights would be affected, and his appeal would not be moot. Although it is not clear that the sustained allegations for failure to protect would mandate a report to the CACI, we need not answer this question as we shall exercise our inherent discretion, pursuant to *D.P., supra,* 14 Cal.5th at pp. 282–286, to reach the merits of Father's appeal.

**B.     *Sufficiency of Evidence to Establish Jurisdictional Findings***

       **1.  *Applicable Law and Standard of Review***

Under section 300, subdivision (b)(1), the court may exercise jurisdiction over a child who has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness as a result of the failure of the parent to adequately supervise or protect the child or to provide regular care for the child. This includes, among other things, if the parents' failure to provide adequate supervision or protection, or provide regular care, is the result of "parent's or guardian's mental illness, developmental disability, or substance abuse." (§ 300, subd. (b)(1)(D).) " 'The basic question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm.' [Citation.] " (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022 (*J.N.*).) In the trial court, the relevant child welfare authority must establish jurisdictional facts by a preponderance of the evidence. (*Id*.; see also § 355, subd. (a).)

"[W]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

" 'On appeal, the "substantial evidence" test is the appropriate standard of review for both the jurisdictional and dispositional findings. [Citations.]' [Citation.]" (*J.N., supra*, 181 Cal.App.4th at p. 1022.) Therefore, " 'we must uphold the [trial] court's [jurisdictional] findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings. [Citation.]' " (*Ibid.*) "To be sufficient to sustain a juvenile dependency petition the evidence must be ' "reasonable, credible, and of solid value" ' such that the court reasonably could find the child to be a dependent of the court … ." (*In re R.M.* (2009) 175 Cal.App.4th 986, 988.)

### 2. *Substantial Evidence Supported the Court's Jurisdictional Findings*

Father argues that there was insufficient evidence to support the court's jurisdictional findings. Father claims that there was no evidence that V.T was actually exposed to fentanyl or was at risk of harm from possible exposure due to the parents' actively using in her presence or leaving the drug within easy access. Father further contends that the inclusion in the allegations of his past possession of fentanyl (during his March 2024 arrest) was insufficient to demonstrate a substantial risk of harm, as this only occurred once in the past; further, his clean drug tests and enrollment in therapy and drug treatment in the four months since detention demonstrated he was keeping V.T safe. Father also claims that there was no evidence that his mental illness had any impact on

his ability to properly care for V.T., as all reports through the jurisdictional hearing demonstrated that he and Mother were "exemplary caregivers and providers," and meeting all of V.T.'s needs.

In response, the Department contends that there was substantial evidence to support the jurisdictional findings. Specifically, the Department argues that the juvenile court properly viewed the February incident involving fentanyl "in the context" with Father's history of substance abuse and mental illness, the parents' lack of candor regarding such history, and the parents' minimization of the seriousness of the February incident. We agree.

In reviewing the record in the light most favorable to the Department, we find there was substantial evidence to demonstrate that V.T. had been placed at substantial risk of harm as a result of her exposure to fentanyl while in Father's care, as well as Father's ongoing and unstable mental illness. With respect to the fentanyl exposure, it was undisputed that Father had passed out next to a car where the occupant—Mother's brother—had been "hot boxing" and he (Father) had been inside the same car shortly before he lost consciousness. Further, the Department noted several inconsistences between Father's description of the February 9, 2025 incident and the police report, particularly in the timing and location of when Father lost consciousness and knocked over V.T.'s stroller. The police report also noted the presence of a substance resembling fentanyl and used methamphetamine paraphernalia in the trunk, which Father had opened to take out V.T.'s stroller. Such information therefore allowed for a reasonable inference that Father's exposure occurred earlier while he was in the car with Mother's brother and V.T., not simply when Mother's brother rolled down the window after Father had exited the vehicle. Accordingly, there was substantial evidence for the court to reasonably conclude that Father's conduct: (1) caused V.T. to be exposed to fentanyl while in the car, thus putting her at risk of harm; and (2) resulted in him losing consciousness from

16

exposure of fentanyl (whether purposeful or accidental), which, in turn, led to him knocking V.T. out of her stroller and causing her physical injuries.

Additionally, as the court noted in its findings, Father had a prior documented history of substance abuse, including recent hospitalizations for psychosis resulting from stimulant use, had been arrested for possession of fentanyl in the recent past (despite a claim that he had been sober since August 2024), and had not been forthcoming about such history in the months following detention. Therefore, substantial evidence supported the court's finding that Father's substance abuse history, and his unwillingness to divulge this history, reflected that the February incident was not just a one-time occurrence, but part of ongoing concerns regarding Father's substance abuse that put V.T. at continued risk of harm. (See *J.N., supra,* 181 Cal.App.4th at pp. 1025–1026 [noting that in evaluating the current risk of harm, a court may consider "present circumstances, which might include, among other things, evidence of the parent's current understanding of and attitude toward the past conduct that endangered a child"].)

There was also substantial evidence demonstrating that Father's ongoing mental health issues were not only linked to his substance abuse, but also impacted his ability to take responsibility for his conduct and willingness to work with the Department towards alleviating the reasons that led to V.T.'s initial detention. The record reflected that Father had been hospitalized several times in the recent past for psychiatric reasons, with his most recent hospitalization occurring in January 2025 and resulting in a diagnosis of stimulant-induced psychosis, methamphetamine use disorder, and chronic post-traumatic stress disorder. While Father did appear to be working on his mental health by seeking treatment through therapy and programs offered by the Veteran's Affairs Office, the Department's interactions with Father reflected that his mental health prevented him from effectively communicating with and understanding the Department's concerns, based on him getting agitated during conversations, accusing the social worker of being coercive, and "bulldozing" the conversation. Further, as with his substance abuse history, Father

17

was also unwilling to fully share details regarding his mental health, and the Department had to make numerous requests for verified documentation from the Veteran's Affairs Office to confirm Father's mental health history. Accordingly, there was substantial evidence for the juvenile court to conclude that: (1) Father had mental health issues that remained ongoing and unstable; and (2) Father's unwillingness to discuss these issues or their possible impact on his ability to care for V.T. placed V.T. at substantial risk of harm.

In conclusion, we find that there was substantial evidence supporting the jurisdictional findings sustained by the juvenile court, and its subsequent adjudication of V.T. as a dependent of the court.

### III. DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

_____
                              Wilson, J.

WE CONCUR:

_____
        Grover, Acting P. J.

_____
        Lie, J.

*In re V.T.; Santa Clara County DFCS v. V.T.*
H053458